# TRUST AGREEMENT

between

**JEANICE FARLEY, Legal Guardian for**

**MICHAEL E. FARLEY**, "Grantor",

and

**FIRST CAPITAL SURETY & TRUST COMPANY,**

Trustee

Creating a Reversionary Medical Care Trust

to be known as the

**MICHAEL FARLEY 2015 IRREVOCABLE REVERSIONARY MEDICAL CARE TRUST**

Prepared By

McDonald & Kanyuk, PLLC
Attorneys at Law
Concord, New Hampshire
(603) 228-9900

4/14/15 - MCN

## **TABLE OF CONTENTS**

Page

ARTICLE I.      TRUST ESTATE ............................................................................................ 2

ARTICLE II.     IRREVOCABLE ........................................................................................... 3

ARTICLE III.    ADMINISTRATION DURING MICHAEL'S LIFETIME ............................. 3

ARTICLE IV.     TERMINATION UPON MICHAEL'S DEATH; REVERSIONARY
                INTEREST OF UNITED STATES GOVERNMENT .................................... 3

ARTICLE V.      APPOINTMENT AND RESIGNATION OF TRUSTEES ............................ 4

ARTICLE VI.     SPENDTHRIFT PROVISION ...................................................................... 5

ARTICLE VII.    TRUSTEE POWERS ..................................................................................... 6

ARTICLE VIII.   TRUSTEE'S ACCOUNTS ............................................................................ 9

ARTICLE IX.     TRUSTEES IN GENERAL .......................................................................... 9

ARTICLE X.      MISCELLANEOUS PROVISIONS ............................................................ 10

ESTABLISHMENT OF THE TRUST

This Trust Agreement dated _____, 2015, is being established by the "Grantor", Jeanice Farley ("Jeanice"), in her capacity as legal guardian of Michael E. Farley ("Michael"), a New Hampshire resident.  Jeanice was appointed as Michael's guardian by the 8th Circuit – Probate Division – Keene, Case No. 313-2010-GI-00633 on June 5, 2012.  First Capital Surety & Trust Company ("First Capital"), a South Dakota chartered trust company with a principal office in Milwaukee, Wisconsin, will serve as the Trust's initial "Trustee". The Trustee agrees to accept their respective appointments and to carry out their respective fiduciary duties and responsibilities as defined by the terms of the Trust.

This Trust Agreement is being established to comply with the "Memorandum and Order" (the "Order") in Civil Action No. 13-cv-261-LM, *Jeanice Farley, individually and on behalf of Michael Farley, an incompetent adult, Plaintiff, v. United States of America, Defendant* (the "Lawsuit") entered by the United States District Court for the District of New Hampshire (the "Court") as part of a final judgment against the United States of America in the Lawsuit.  A copy of the Order is attached to this Trust Agreement as Exhibit "A", and is being incorporated herein by this reference.

<u>Recitals</u>

1.      This Trust Agreement was prepared by McDonald & Kanyuk, PLLC, New Hampshire trust counsel retained by Jeanice as Plaintiff in the Lawsuit.  The Parties submitted the Trust Agreement to the Court for its review and approval.  The Court reviewed and accepted it by its Order dated _____, a copy of which will be attached hereto as Exhibit "B".

2.      This Trust Agreement, and the Trust created hereunder, is governed by New Hampshire law for all purposes, including the provisions of New Hampshire's Trust Code, NH RSA Chapter 564-B, except to the extent that Federal law is expressly made applicable as hereinafter provided.  Notwithstanding any law to the contrary, this Trust, being established pursuant to a final judgment against the United States of America, is Irrevocable and may not be changed, altered, or amended in any way for any reason.

3.      The Beneficiary of this Trust is Michael Farley.  The sole and exclusive remainder beneficiary upon the death of Michael Farley is the United States of America. For purposes of this Trust, the United States is deemed to be a beneficially interested person, only insofar as the United States of America is a reversionary beneficiary.

4.       The purpose of the Trust is to pay allowable benefits, as defined in Article III of the Trust, to or on behalf of Michael Farley according to the terms and conditions of the Trust. Nothing in the Trust shall be construed to require Michael Farley to use any particular medical provider or group of medical providers, unless expressly provided to the contrary in Article III of the Trust.  This Trust is not, and shall not be construed to be, a special needs or supplemental needs trust.

5.       The interested parties shall each be responsible for providing each other with timely written notice of any change in address or phone number. The Beneficiary shall give timely written notice of a guardianship or conservatorship or change thereof to the Trustee. Any notification shall be deemed given when posted by regular United States Mail addressed to the last known address. Service of any legal papers shall comply with the rules of the court in which the action or proceeding is filed and shall be made upon all interested parties at the addresses provided above or any subsequent change of address that has been provided, unless a party is represented by counsel, in which case service shall be upon counsel. In addition, the Trustee and representative of the Beneficiary shall give a Notice of Death to the United States within sixty (60) days of the death of the Beneficiary. Unless otherwise directed by the United States Department of Justice, the Notice of Death shall be sent to the following address: Director, Torts Branch (FTCA Staff), Civil Division, United States Department of Justice, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044.

## ARTICLE I.
## TRUST ESTATE

The initial principal hereof, cash in the amount of $_____, is described on **Schedule "A"**, attached to and incorporated by reference into this Trust Agreement.  That amount, and any other assets held hereunder in the future will be managed, held, invested, administered, and distributed by the Trustee for Michael's benefit under the terms, provisions, conditions, and limitations set forth in this Trust Agreement.

No rights, obligations, duties, or allowable benefits are created or payable pursuant to the Trust unless and until all of the following conditions have been met: (1) each party to the Trust has signed the Trust instrument; (2) the Grantor has deposited with the Trustee the initial sum stated above; (3) the Trustee has deposited said sum into a separate account opened by the Trustee in the name of the Trust; and (4) the Beneficiary is alive at the time said sum is deposited into said separate account. The Trust shall be deemed established when each and every one of these conditions has been met.

2

ARTICLE II.
IRREVOCABLE

The Trust Agreement is irrevocable. Neither Michael nor his guardian or any other legal representative will have any right or power to alter, amend, modify, revoke or terminate this Trust Agreement or any of its terms.  The Trustee serving hereunder shall have no right or power to alter, amend, modify, revoke or terminate this Trust Agreement or any of its terms, in whole or in part, except as expressly provided in this Trust Agreement, irrespective of any provisions of the governing law that might otherwise grant the Trustee a power to merge the Trust with another trust, modify the Trust Agreement, "decant" the Trust's assets to another trust, or take any other action that might alter or modify the provisions hereof.

ARTICLE III.
ADMINISTRATION DURING MICHAEL'S LIFETIME

The sole purpose of the Trust is to pay the medical, healthcare, and attendant care expenses of Michael Farley (hereinafter "Beneficiary") as determined by District Court's Order dated April 3, 2015, and Final Judgment in *Farley v. United States of America*, Civil Action No. 13-cv-261-LM.

During Michael's lifetime, the Trustee may apply for Michael's benefit such amount or amounts of the Trust's net income and principal, whether the whole or a lesser amount, as the Trustee determines, is necessary for Michael's medical care needs, to the extent those needs are medically related to Michael Farley's locked-in syndrome. To the extent the Trustee is authorized by this Trust to pay any real or personal property expenses, the Trustee is prohibited from owning any such property as an asset of the Trust.

Specifically, the Trustee shall authorize and pay only those reasonable medical expenses of the Beneficiary as determined by the Order dated April 3, 2015, and those arising from, caused by, or necessitated by the injuries specified in said Order, including but not limited to the following categories of expenses: medical treatment and care; attendant care; therapy and counseling; prescription drugs and medicines; medical devices; medical appliances; durable medical equipment; medical supplies; medical diagnostic testing; and expenses for home and vehicle modifications necessary for handicapped access or use.

ARTICLE IV.
TERMINATION UPON MICHAEL'S DEATH; REVERSIONARY
INTEREST OF UNITED STATES GOVERNMENT

**Section A. Terminating Event**

This Trust will terminate upon Michael's death or when the Trust Estate becomes Zero Dollars ($0.00).

**Section B. Payments Authorized After Terminating Event**

Upon the death of the Beneficiary, the Trustee shall pay any medical expenses authorized by this Trust document to the extent there are sufficient funds in the Trust Estate. The Trustee shall not authorize any medical expense that was not properly submitted to the Trustee within six (6) months of the date of the appointment of the Administrator of the Estate of the Beneficiary, pursuant to New Hampshire law. In the event any expense has been authorized to be paid on a monthly basis, the Trustee shall pay only the pro rata share for the month of the Beneficiary's death. The Trustee shall also pay any expenses of the management and administration, including the fees of the Trustee. In the event that the assets of this trust create a tax liability for the Beneficiary's estate, any remaining assets may be used to pay that liability. In the event there are insufficient funds to pay both the expenses of management and administration and allowable other expenses, the Trustee shall first pay the expenses of management and administration.

**Section C. Distribution of the Trust Estate**

After the Trustee has made the payments authorized above in Article IV, the Trustee shall expeditiously liquidate and distribute the remaining Trust Estate, including any current and accumulated interest and income, to the United States by check made payable to the United States Treasury fbo Michael Farley and delivered to the United States at the address on record with the Trustee, along with a final statement of account.   Unless otherwise directed by the United States Department of Justice, the check and final statement of account shall be mailed to the following address:  Director, Torts Branch (FTCA Staff), Civil Division, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044.

<u>ARTICLE V.</u>
<u>APPOINTMENT AND RESIGNATION OF TRUSTEES</u>

A.      <u>Appointment of Trustees</u>.

1.      <u>Initial Trustee and Successor Trustees</u>. All references in this Trust Agreement to "Trustee" shall refer to the Trustee then serving.  If First Capital is no longer serving as Trustee, or in the event of a further vacancy in the office of Trustee, the then serving Trustee, or in default, a court of competent jurisdiction, shall appoint a successor Trustee.

2.      Eligibility Criteria.  A Trustee shall always be a banking or trust institution possessing trust powers under the laws of the jurisdiction in which it maintains its principal place of business.

3.      Manner of Trustee Appointment.  Trustee appointment shall be made by an instrument signed by the person or persons authorized to make the appointment, if any, and such appointment shall become effective only upon the written acceptance of the person so appointed.

4.      Powers, Rights and Duties of Successor Trustees.  Each successor Trustee will automatically acquire as of the date of appointment title to all Trust assets, and will succeed to all powers and discretion that are then vested in its predecessor, without necessity of any conveyance or transfer, but any predecessor Trustee shall execute all documents and do all acts necessary to vest and indicate such title in such successor Trustee.

5.      Liability of Successor Trustees.  No successor Trustee shall be liable for the acts of default of any predecessor Trustee or for any loss or expense from anything done or neglected to be done by any predecessor Trustee.  Any successor Trustee who shall be then acting as Trustee will not be guilty of wrongdoing merely because it is acting as successor Trustee if it shall later be discovered that another has been designated as successor Trustee to any provisions herein.

B.      Resignation of Trustee.  A Trustee may resign for any reason whatsoever by giving written notice of resignation to Michael's guardian or conservator.  The Trustee shall continue to serve until a successor Trustee is appointed and such appointed successor Trustee accepts such office.

ARTICLE VI.
SPENDTHRIFT PROVISION

To the extent permitted by law, no income or principal distributable or to become distributable hereunder will be transferable, assignable, or subject to interference or control by any of Michael's creditors, or subject to any claim for alimony or for the support of a spouse pursuant to a temporary or permanent decree of separate maintenance, support, or divorce, or to a temporary or permanent separation agreement, or to being taken or reached by any legal or equitable process in satisfaction of any debt or liability of Michael.  This spendthrift provision is a material purpose of this Trust Agreement.

ARTICLE VII.
TRUSTEE POWERS

A.    <u>Trustee Powers</u>.  The Trustee is authorized to exercise from time to time all powers conferred upon Trustees by the governing common and statutory law, and it is intended that such powers, including the following, be construed in the broadest possible manner.

      1.    To establish appropriate investment objectives and have regular meetings to determine whether investment objectives are still appropriate;

      2.    To collect all money; in accordance with generally accepted trust accounting principles, to determine whether money or other property coming into the Trustee's possession shall be treated as principal or income and to charge or apportion expenses, taxes, gains and losses to principal or income;

      3.    To retain as suitable investments for the Trust estate or estates any properties the Trustee receives, and whether received by purchase or in any other manner, without regard to any restriction, statutory or judicial, or any rule or practice now or hereafter in force specifying or limiting the permissible investments of trustees, trust companies or fiduciaries generally or requiring the diversification of investments, and without liability to any person whomsoever for loss or depreciation in value thereof;

      4.    To sell, exchange, convey, lend, borrow, pledge, lease, control, manage, and to make contracts concerning, any of the properties, comprised in the Trust estate or estates, all either publicly or privately and for such consideration and upon such terms as to credit or otherwise as may be reasonable under the circumstances, which contracts may extend beyond the duration of any of the trusts created hereunder; to give options therefor; and to execute transfers, notes, and other instruments of any kind; Notwithstanding anything herein to the contrary, however, in no event may the Trustee invest all or any portion of the Trust estate in real estate or qualified annuities.

      5.    To invest and reinvest the properties from time-to-time comprised in the Trust estate or estates in stocks, common and/or preferred, bonds, notes, debentures, loans, common trust funds, or other membership interests, securities or personal property, subject to all limitations now or hereafter imposed by law, statutory or judicial, or by any rules or practice of court now or hereafter in force specifying or limiting the permissible investments of trustees, trust companies or fiduciaries generally or requiring the diversification of investments, being hereby expressly waived, without liability to any person whomsoever for loss or depreciation in value thereof, it being the intent hereof that the Trustee shall have full power and authority to deal with the Trust estate or estates in all respects as though it was the sole owner thereof, without order of court or other authority; Notwithstanding anything herein to the contrary,

however, in no event may the Trustee invest all or any portion of the Trust estate in real estate or qualified annuities.

6.     To exercise voting rights, execute and deliver powers of attorney and proxies and similarly act with reference to shares of stock and other securities comprised in the Trust estate or estates in such manner as it deems proper, including without limitation, the power to participate in or oppose reorganizations, recapitalizations, mergers, consolidations, exchanges, liquidations, arrangements and other corporate actions;

7.     To compromise, adjust and settle claims in favor of or against the Trust estate or estates upon such terms and conditions as the Trustee may deem best; in the case of any litigation in connection with any part of such Trust estate or estates, it may, under advice of Trustee's counsel, arbitrate, settle, or adjust any such matter in dispute upon such terms as the Trustee may consider just and equitable, and the Trustee's decision shall be binding upon all Parties interested hereunder;

8.     To employ disabilities consultants, investment counsel, custodians of estate property, brokers, accountants, financial planners, attorneys, clerical or bookkeeping assistants, and other suitable agents and to pay their reasonable compensation and expenses in addition to any compensation payable to the Trustee in accordance with ARTICLE VIII, Paragraph A of this Trust Agreement, and to execute and deliver powers of attorney; the Trustee shall not be liable for any neglect, omission or wrongdoing of such educational consultants, disabilities consultants, financial planners, investment counsel, custodians, brokers, accountants, attorneys, assistants or agents;

9.     To hold title to stocks, bonds, or other securities or personal property, in the Trustee's own name or in the name of the Trustee's nominee and without indication of any fiduciary capacity or to hold any such bonds or securities in bearer form;

10.    To make any allocation, division or distribution required or permitted hereunder in cash or in kind, in personal property, or an undivided interest therein, or partly in cash and partly in kind, and to do so without making pro rata allocations, divisions or distributions of specific assets, property allocated, divided or distributed in kind to be taken at its fair market value at the time of such allocation, division or distribution;

11.    To insure the assets of the Trust against damage or loss and the Trustee against liability with respect to third persons;

12.    To make such expenditures and do such other acts as are reasonably required to manage, improve, protect, preserve, invest or sell any of the Trust assets or otherwise

7

properly administer this Trust, including paying taxes on behalf of the Trust occasioned by the Trust; The Grantor hereby negates any right the Beneficiary might have under state law to require the Trustee to reimburse the Beneficiary for any federal or state income tax liability the Beneficiary pays as a result of the Beneficiary's  net income interest in the Trust and the existence of any powers of the Trust as provided in this Trust Agreement.  Notwithstanding the foregoing, during the Beneficiary's lifetime, the Trustee may, in its sole and absolute discretion, make distributions of the net income or principal of the Trust to the Internal Revenue Service (or similar state agency) in order to satisfy any federal or state income tax liability incurred by the Beneficiary pursuant to the laws of the United States or any state in the United States that is attributable to income of the Trust if the Beneficiary is treated as the owner for federal income tax purposes under subchapter  J of the Internal Revenue Code of 1986, as amended.  The Trustee is authorized, in its sole and absolute discretion, by an instrument filed with the subject trust records, to irrevocably release the right to satisfy any such tax liability.

13.     To change the situs and/or governing law of any trust hereunder to any state the Trustee from time-to-time may deem desirable, and to take such further actions, including without limitation the amendment to the terms of the Trust Agreement, as may be necessary or advisable to effect such change;

14.     To pay an amount or amounts to state and federal tax authorities, representing the income tax liability of the Trust; to pay other expenses incurred in the collection, care, administration and protection of the Trust;

15.     To employ one or more agents to perform any act of administration, whether or not discretionary, instead of acting personally; to act without independent investigation upon their recommendations; and the Trustee shall not be liable for any neglect, omission or wrongdoing of any such consultants, advisors, counsel, agents, etc.

B.     Reliance by Others.  No person, firm or corporation dealing with the Trustee or a nominee of the Trustee or performing any act pursuant to action taken or order given by the Trustee or such nominee shall be obliged to inquire as to the propriety, validity or legality thereof hereunder, nor shall any such person be liable for the application of any money or other consideration paid to the Trustee or such nominee, but, instead, may rely upon any action taken by the Trustee or such nominee in accordance with the powers and authorities conferred upon the Trustee under the provisions of this Trust Agreement in all respect as if the same were completely unlimited.  No transfer agent or registrar of any security held hereunder shall be required to inquire as to the propriety, validity or legality of any transfer made by the Trustee or such nominee.  A "Certification of Trust" signed by any Trustee as provided in NH RSA 564-B: 10-1013 shall be conclusive evidence upon all persons and for all purposes of the facts stated in

8

said certificate with regard to the terms of this Trust Agreement, the text thereof, and who is Trustee.

## ARTICLE VIII.
## TRUSTEE'S ACCOUNTS

A.     <u>Duty to Account</u>.  Each year, the Trustee shall render an accounting of its administration of the Trust to Michael's legal guardian or other legal representative, and to the extent required by a court of competent jurisdiction or a successor Trustee, an accounting for the administration of the Trust shall also be given to the successor Trustee. A successor Trustee will be fully protected in relying upon such accounting and also in not requiring such an accounting from the predecessor Trustee.

B.     <u>Approval of Accounting</u>. The written approval of an accountee shall, as to all transactions shown in such accounting, be final and binding on all persons beneficially interested hereunder, and the failure of any such accountee to object to such accounting within sixty (60) days after the receipt of such accounting will be deemed to be the equivalent of such persons' written approval. In any event, the United States shall have no right to object to accounting of the trust during the life of Michael Farley.

C.     <u>Effect of the Uniform Trust Code</u>.  At any time the trust is governed by the laws of a state that has enacted the Uniform Trust Code (the "UTC"), whether New Hampshire, as reflected in NH RSA 564-B, or other trust code prescribing "default" rules for trusts governed by that state's laws, any non-mandatory default provisions of the UTC (or other trust code, as the case may be), as it may be amended from time to time, regarding the Trustee's duty to inform and report to beneficiaries of the Trust are hereby waived.  It is intended to limit the Trustee's duty to inform, report to or account to the provisions of Paragraph A. of this ARTICLE to the extent that the governing law permits it.

## ARTICLE IX.
## TRUSTEES IN GENERAL

A.     <u>Compensation and Expenses</u>.  Any Trustee shall be entitled to charge and receive from the Trust estate a fair, reasonable and just compensation for services rendered as Trustee, or, in the case of any sole-proprietorship, partnership, limited partnership, limited liability company, corporation or bank who is serving as Trustee hereunder (hereinafter the "corporate Trustee"), in accordance with such corporate Trustee's fee schedule in effect at the time the services are rendered, and to be reimbursed from the Trust estate for all reasonable expenses incurred in the administration of the Trust.

9

B.      <u>Bond</u>.  No bond or any other security will be required of any Trustee.

C.      <u>Trustee Liability</u>.    No Trustee of this Trust shall be liable for any loss, liability, expense or damage to the Trust estate occasioned by such Trustee's acts or omissions in good faith in the administration of such Trust (including acts or omissions in reliance on opinion of counsel) and in any event a Trustee shall be liable only for its own willful default or wrongdoing, but not for honest errors of judgment.  The Trustee shall not be liable upon any claim against the Trust estate.

ARTICLE X.
MISCELLANEOUS PROVISIONS

A.      <u>Statutory References</u>.  All statutory references will include subsequent amendments and corresponding provisions of any subsequently enacted laws.

B.      <u>Headings</u>. The headings, titles and subtitles herein are inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof, except that cross references between paragraphs are to have the effect of incorporating by reference the paragraph so cross-referenced.

C.      <u>Pronouns</u>. As used herein, all pronouns shall include the masculine, feminine, neuter, singular and plural thereof wherever the context and facts require such construction.

D.      <u>Counterparts</u>.  This Trust Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one agreement.

E.      <u>Effective Date</u>.   This Trust will be effective upon the date established in Article I, Paragraph 2.

**[SIGNATURE PAGE FOLLOWS]**

10

IN WITNESS WHEREOF, the Grantor, acting on Michael's behalf, and the Trustee, First Capital Surety & Trust Company, have hereunto placed their hands on the dates indicated below.

**THE GRANTOR**

_____        _____
Witness                                                                    Jeanice Farley, Legal Guardian for
Michael E. Farley

STATE OF _____
COUNTY OF _____

On this the \_\_\_\_ day of _____, 2015, before me, the undersigned officer, personally appeared Jeanice Farley, as Legal Guardian for Michael E. Farley, known to me (or satisfactorily proved) to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_____
Notary Public

**FIRST CAPITAL SURETY &
TRUST COMPANY, Trustee**

_____        _____
Witness                                                                    By: _____, its
_____duly authorized

STATE OF _____
COUNTY OF _____

On this the \_\_\_\_ day of _____, 2015, before me, the undersigned officer, personally appeared _____ known to me (or satisfactorily proved) to be the person whose name is subscribed to the within instrument and acknowledged that \_\_\_ executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_____

Notary Public

<u>Exhibit A</u>

See attached Memorandum and Order of the Court

<u>Exhibit B</u>

See attached Court order approving and accepting the Trust Agreement

**Schedule A**

Initial Assets:        Cash in the amount of  _____.